618 A.2d 1108

James and Evelyn OVERSTREET, Appellants,

v.

ZONING HEARING BOARD OF SCHUYLKILL
TOWNSHIP and Board of Supervisors of
Schuylkill Township, Appellees.

James and Evelyn OVERSTREET, Appellants,

v.

ZONING HEARING BOARD OF SCHUYLKILL
TOWNSHIP and Board of Supervisors of
Schuylkill Township, Appellees.

Commonwealth Court of Pennsylvania.

Argued June 16, 1992.

Decided Dec. 3, 1992.

William J. Gallagher, for appellants.

Roger E. Legg, for intervenor/appellee Schuylkill Tp.

Before CRAIG, President Judge, PALLADINO, J. (P.), and BARRY, Senior Judge.

CRAIG, President Judge.

In this zoning case, mobilehome park owners, James K. and Evelyn Overstreet (Overstreets), appeal from an order of the Court of Common Pleas of Chester County dated October 31, 1991, as amended by the court's order of November 27, 1991, which affirmed the Schuylkill Township Zoning Hearing Board's decision to deny the Overstreets' request to invalidate the township's zoning ordinance on constitutional grounds. Because the zoning hearing board made no errors of law nor abused its discretion, we affirm.

## HISTORY OF THE CASE

The Overstreets' attempts to expand their mobilehome park began in 1969 when they first applied to the board for permission to add seventy mobilehome units in the eastern portion of their 15.5 acre tract, as a continuation of a legal nonconforming use or by a variance. This request was denied by the board, the trial court, and by this court in *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 49 Pa.Commonwealth Ct. 397, 412 A.2d 169 (1980).

The entire tract in question is zoned for residential use, with 20,000 square foot minimum lots (approximately one-half acre), formerly R–3 and now called an R–2 Residential District, according to the Schuylkill Township Zoning Ordinance of 1955, *as amended* (the Ordinance). Although individual mobilehomes are permitted in residential districts as long as

they comply with the area and other requirements in each district, mobilehome *parks* are not permitted in residential districts, but rather are limited to Commercial, Limited Industrial, and Industrial/Limited Industrial Districts (C/LI Districts). Because the western portion of the Overstreets' land was used as a mobilehome park before the Ordinance was enacted in 1955, those mobilehomes constitute a lawful nonconforming use, but the Overstreets were not authorized to expand their park into the eastern portion. *Id.* at 400, 412 A.2d at 171.

However, between 1969 and 1975, the Overstreets did expand their park by seventy units, which they placed in the eastern portion of the tract. Therefore, since 1980, the Overstreets have maintained approximately fifty-two approved units in the western portion of their park, and they have been required to engage in a long process of removing seventy illegal units from the eastern portion of their land.

After the township sought an injunction to expedite the removal of the residents from the eastern portion of the park, the trial court ordered, and this court affirmed, that the tenants in the eastern portion were indispensable parties to the ongoing litigation, and must be joined as defendants. *Schuylkill Township v. Overstreet,* 71 Pa.Commonwealth Ct. 348, 454 A.2d 695 (1983). The township joined the tenants in question as defendants on August 1, 1983.

In an order dated November 4, 1985, the trial court directed those tenants in the eastern portion of the park who moved in after August 1, 1983 to vacate their lots, allowing those who occupied their units on or before August 1, 1983 to remain. The court further ordered the Overstreets to remove the mobilehome pads and other improvements from lots in the eastern portion as they became vacant, not to permit any new tenants to move into that area, and to provide updates to the court of the removal process, and assessed penalties against the Overstreets. The trial court reaffirmed this order and dismissed the parties' post-trial motions in a Supplemental Opinion dated April 10, 1986. This court affirmed those trial court decisions in *Schuylkill Township v. Overstreet,* 107

Pa.Commonwealth Ct. 492, 529 A.2d 551 (1987), except that we reversed on the issue of the penalty, and clarified that only those tenants who moved into the eastern portion after August 1, 1983 who were also named as defendants in this case could be directed to vacate their lots.

On May 18, 1988, the Overstreets asked the board to consider a new challenge to the zoning scheme on the grounds that the ordinance impermissibly excludes mobilehome parks from the township, and should be invalidated as unconstitutional. The Overstreets also requested a variance from the terms of the ordinance and an extension of a nonconforming use as part of the same application. The board held a total of ten hearings in 1988 and 1989, including a view of the property at the last hearing in May 1989.

On December 4, 1989, the board issued a decision which contained extensive findings of fact and conclusions of law, which denied the Overstreets' requests to invalidate the Ordinance, to obtain a variance from the minimum lot requirements within mobilehome parks, and to expand the park as a nonconforming use. The Overstreets appealed to the trial court from the board's decision, arguing that the board committed errors of law and abused its discretion. The trial court entertained arguments on this appeal in October 1990, but did not take any new evidence.

During the time in which the board and the trial court were deciding the merits of the Overstreets' zoning appeal, the township asked the trial court to hold the Overstreets in contempt for failing to proceed with the evictions of residents in the eastern section of the park. The trial court ruled, on November 3, 1988, not to hold the Overstreets or the other defendants in contempt, but ordered the Overstreets to begin the necessary evictions within thirty days, and to stop collecting rents from the affected tenants. The court again ordered the Overstreets to notify the township of each eviction, to remove the improvements from vacant lots, to prohibit new tenants from moving into those lots, and if they failed to begin the evictions, the court authorized the township to step in and begin the proceedings in their place. Furthermore, the court

ordered that the Overstreets be fined for each day of delay in commencing evictions, and ordered them to pay attorneys' fees and costs to the township. This court granted the Overstreets a stay pending appeal to the Pennsylvania Supreme Court,[1] and then affirmed the November 3, 1988 trial court order, except that we prohibited the township from evicting the Overstreets' tenants, and prohibited the court's assessment of daily penalties.[2]

The Overstreets again appealed to our Supreme Court and requested a stay pending appeal. The Court denied the appeal on March 20, 1990, at which time the trial court's 1988 order, as modified by this court's 1989 order, went into effect, requiring the Overstreets to begin evictions, stop collecting rents, and pay the township's attorneys' fees. The township asked the trial court, for the second time, to hold the Overstreets in contempt for failing to proceed with the evictions. In April 1990, the Overstreets petitioned the trial court to amend its 1988 order to allow them to continue to collect rental payments from the tenants in the disputed section of the park, so that those residents would not benefit by refusing to vacate their lots, and the Overstreets would contribute the rental payments to local charities.

The court held a hearing on the contempt issue, and then rendered its decision on October 31, 1991 on both the Overstreets' zoning appeal and the township's contempt action.[3] The Honorable Lawrence E. Wood reached the following conclusions.

1. The board did not err in finding that the Ordinance does not impermissibly, arbitrarily, or unreasonably discriminate

1. *Schuylkill Township v. Overstreet* (No. 2666 C.D. 1988, filed December 27, 1988), after which the Supreme Court declined to hear the appeal.

2. *Schuylkill Township v. Overstreet* 127 Pa.Cmwlth 668, 560 A.2d 943 (1989).

3. In this opinion, the court did not address the eviction action involving the tenants in the eastern portion of the park, because it was not ripe for disposition. In their brief to this court, the Overstreets note that the trial court has since ordered the tenants/defendants in the ejectment action to remove their homes from the park. *Phoenixville Mobile Homes, Inc. v. Fryer, et al*, No. 90–06799, March 2, 1992.

against mobilehome parks by restricting them to C/LI Districts.

2. The board did not err in finding that the Ordinance does not impermissibly exclude mobilehomes parks from the township and provides for the township's fair share of mobilehome parks.

3. The board did not err when it found that restricting mobilehome parks to the C/LI Districts bears a rational relationship to the township's legitimate exercise of its zoning power, and therefore the Ordinance does not violate the Overstreets' rights to equal protection.

4. The board did not err when it found that the Schuylkill Township Subdivision and Land Development Ordinance's (Subdivision Ordinance) 5000 square foot minimum lot requirement for mobilehomes within mobilehome parks is reasonably related to providing for the health, safety, and welfare of the community.

5. The board erred in determining that the Overstreets are entitled to a 25% expansion [4] of the number of mobilehomes which existed at the time they filed their first zoning appeal in 1969, rather than the number of homes existing in 1955 when the Ordinance was enacted. The trial court remanded the case to the board to determine the number of units which existed in 1955 which had not been abandoned in 1969, as this number was not clear from the record.

6. Although some of the board's findings of fact were not supported by substantial evidence, the court found that those findings were not necessary to support its conclusions of law, and the errors were therefore harmless.

7. The court found the Overstreets in contempt of its earlier orders, with respect to the township's attorney's fees, eviction of the illegal tenants in the eastern portion, and removing improvements from the vacant lots. The court directed the Overstreets to comply with its orders within thirty days or face a prison sentence. In the alternative, the

4. Section 1900.B of the Ordinance allows up to a 25% extension of a legal nonconforming use, when authorized by special exception.

court would allow the Overstreets to appoint a trustee or receiver to manage the disputed section of the park and bring it into compliance with the Ordinance.

The Overstreets then filed a motion for reconsideration with the trial court, arguing that the court's order of October 31, 1991 placed them in an unfair situation by requiring them to evict tenants more quickly than allowed by law, or to be jailed for contempt. The Overstreets also argued that they already paid $26,900 in attorney's fees to the township in April 1990, after the Supreme Court lifted their stay and denied the appeal, but that the additional $14,641 in attorneys' fees claimed by the township was not properly charged to the Overstreets.

In response, the trial court issued an order on November 27, 1991, amending its October 31, 1991 order to allow the Overstreets to continue to collect rent from its tenants in the eastern section as long as the money was given to local charities chosen by the township, acknowledging that the evictions in question were now ready for disposition, giving the township access to the Overstreets' tenant records for ongoing monitoring, and delaying the actual adjudication of contempt until January 31, 1992. The trial court amended its earlier finding of contempt to a rule absolute, giving the Overstreets time to satisfy the conditions to avoid contempt, including paying the additional $14,641 in disputed attorneys' fees to the township. All other aspects of the court's earlier order remained in full force and effect.

The Overstreets then appealed to this court on December 2, 1991, from the trial court's order of October, as amended by the order of November 1991. Although the township argues that the Overstreets' appeal is untimely because it was filed more than thirty days after the trial court's October 31, 1991 order, in violation of Pa.R.A.P. 903, we disagree. Pa.R.A.P. 903 requires that an appeal be filed within thirty days "after the entry of the order from which the appeal is taken." Because the Overstreets appealed from the trial court's November 27, 1991 order, which amended its October order, the Overstreets' appeal is not untimely.

The Overstreets also requested a stay pending appeal as to the payment of rents to charities designated by the township. This court ordered that the payment of rents to charities be stayed pending the outcome of this appeal, and that the payments collected by the Overstreets while the appeal was pending, as well as those already collected in the course of this. dispute, should be paid immediately into an escrow account controlled by the Overstreets' counsel.[5] The Overstreets' zoning appeals before this court have been consolidated for review, but the contempt issue will be addressed separately, in the companion opinion, *Overstreet v. Schuylkill Township* (No. 2563 C.D.1991, filed December 3, 1992).

## LEGAL FRAMEWORK FOR MOBILEHOME ZONING

■ Where the trial court has taken no additional evidence, as is the case here in the Overstreets' zoning appeal, our scope of review is limited to determining whether the board committed an error of law or an abuse of discretion. *Borough of Malvern v. Jackson*, 108 Pa.Commonwealth Ct. 248, 529 A.2d 96 (1987). The board abuses its discretion if its findings are not supported by substantial evidence. *Id.*

■ Because a zoning ordinance is presumed to be valid and constitutional, the challenger has a heavy burden to prove otherwise; however, the challenger can rebut this presumption if he demonstrates that the ordinance in question completely excludes a legitimate use. *Meyers v. Board of Supervisors of Lower Makefield Township*, 38 Pa.Commonwealth Ct. 578, 394 A.2d 669 (1978). Then, the burden shifts to the municipality to show that the regulations substantially relate to the community's health, safety, and general welfare. *Id.* This court has repeatedly held that mobilehome parks are a legitimate land use. *Id.*

■ Even though an ordinance does not totally prohibit a legitimate use on its face, the ordinance may be invalidated if it fails to provide for its fair share of a legitimate use within a

5.  *Overstreet v. Schuylkill Township* (No. 2563 C.D.1991, filed March 11, 1992).

municipality, which amounts to a *de facto* exclusion, although not an outright prohibition. In *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977), the Supreme Court set forth a three-part test for fair share analysis. First, the inquiry must focus on whether the community in question is a logical area for population growth and development. Next, if the community is in the path of growth, the present level of development must be examined. Lastly, if the community which is located in the path of growth is not already highly developed, then the reviewing body must determine if the zoning ordinance has the practical effect of unlawfully excluding the legitimate use in question. Exclusionary impact can invalidate an ordinance; exclusionary intent is not necessary. *Id.* at 193, 382 A.2d at 111.

■ The Supreme Court, in *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985), ruled that the *Surrick* fair share test was applicable only to ordinances which partially excluded a legitimate use and not to ones which affected a total prohibition. Therefore, after the challenger shows that an ordinance totally excludes a particular housing type, the burden shifts to the municipality to show that the exclusion bears a substantial relationship to the health, safety, and welfare of the community, and the questions of population growth, development, and fair share are not relevant to that inquiry. However, if an ordinance works a *de facto* exclusion, the challenger must satisfy the three-part *Surrick* test to invalidate that ordinance for not providing its fair share of a legitimate use within the municipality.

■ Furthermore, we note that both as a legal and a practical matter, individual mobilehomes and mobilehome parks are two different types of legitimate housing uses. Thus, as in this case, the fact that an ordinance allows mobilehomes, like other detached, single-family dwellings, to be placed on individual lots in residential districts does not affect our analysis of the municipality's regulation of mobilehome parks. As this court stated in *Environmental Communities of Pennsylvania, Inc. v. North Coventry Township*, 49

Pa.Commonwealth Ct. 167, 169, 412 A.2d 650, 651 (1980), "a mobile home park is not simply a conglomeration of mobile homes, but rather a planned community involving social, re-creational and commercial activities." Therefore, "the device of permitting mobile homes on individual lots will not substitute for the responsibility of providing for mobile home parks." *Id.*

## ANALYSIS OF THE ORDINANCE

██ We agree with the board and the trial court that the Ordinance is not arbitrary, unreasonable, or discriminatory in limiting mobilehome parks to C/LI Districts.[6] This court held, in *Hodge v. Zoning Hearing Board of West Bradford Township*, 11 Pa.Commonwealth Ct. 311, 319, 312 A.2d 813, 818 (1973), that it was not unreasonable to confine mobilehome parks to commercial districts, because "[a] mobile home park, unlike individual mobile homes, is often a commercial as well as a residential development, and it requires specifc [sic] regulations by the municipality. It is hardly improper or discriminatory to place reasonable restrictions on such a de-velopment, including placing it in other than purely residential districts." [7]

This court further stated in *Hodge* that the name given to the district to which a use is restricted "is of no consequence where, as here, it clearly does not result in grouping such use with totally incompatible uses and thus rendering the districts concerned unusable for the proposed use." *Id.* Although the Overstreets argue that the noise, odors and intensity of devel-

6. Sections 1201.I and 1301.C of the Ordinance permit mobilehome parks in the Commercial and Limited Industrial Districts, respectively, as long as they comply with the requirements of the Subdivision Ordinance such as providing water, sewers, minimum lot size, and so on. The Zoning Hearing Board created the Industrial/Limited Industri-al District, which permits all the uses from both the Industrial and Limited Industrial Districts, by amending the township zoning map, effective July 23, 1980, but not by amending the text of the Ordinance itself. The I/LI District also permits mobilehome parks.

7. *See also Groff Appeal*, 1 Pa.Commonwealth Ct. 439, 274 A.2d 574 (1971), and *Honey Brook Township v. Alenovitz*, 430 Pa. 614, 243 A.2d 330 (1968).

opment present in C/LI Districts render them unsuitable for mobilehome parks, evidence in the record fails to support that claim. Before the board, a real estate broker, G. Rex Cafp, III, testified that higher levels of noise and odors were permitted in C/LI Districts than in Residential Districts in the township, but that does not lead us to conclude necessarily that C/LI Districts are unsuitable for mobilehome parks.

Section 1300 of the Ordinance states that the purpose of creating the LI District is to allow for the development of research facilities and small industrial plants "which emit no objectionable fumes or smoke and which will not cause a large increase in vehicular traffic...." Section 1313 of the Ordinance limits noise and vibration in both the I and LI Districts. Additionally, Section 501.A.7 of the Subdivision Ordinance requires all mobilehome parks to be effectively screened along the boundaries, to obstruct the view of incompatible or objectionable uses.

According to section 1201 of the Ordinance, permitted uses in the C District include clubs and lodges with overnight accommodations, restaurants, shops, and offices; motels and rooming houses are permitted by special exception. Section 1301 of the Ordinance permits in the LI District such uses as single-family dwellings on farms, shops, offices, and some manufacturing activity; motels, again, are permitted by special exception. After carefully reviewing the record and examining the township's zoning scheme, we can find no proof that a mobilehome park is incompatible with the uses permitted C/LI Districts. Thus the ordinance is not unreasonable or arbitrary in its treatment of mobilehome parks.

## FAIR SHARE ANALYSIS

The Overstreets failed to carry their burden of proving that the effect of the Ordinance was to exclude mobilehome parks, either because the land allotted to them was too expensive for feasible development of mobilehome parks, or because the amount of land available for mobilehome parks was so small that it prevented the township from providing for its fair share of mobilehome parks.

■   We agree with the trial court [8] that the record does not support the first part of the *Surrick* test, that Schuylkill Township is in the logical path of population growth and development.   The record contains no projections of population growth for the township or any other specific factors, such as access by major roads or public transportation, or anticipated economic development that would support the claim that the township is growing.   The Overstreets cite several cases in which the courts found that neighboring municipalities were growing and developing,[9] but those decisions are not dispositive on the question of Schuylkill Township's growth.   In fact, in *Fernley*, where the Supreme Court decided a zoning appeal from the same township as in this case, the Court found that Schuylkill Township was not expected to experience significant population growth through the year 2000.   509 Pa. at 420 n. 6, 502 A.2d at 588 n. 6.

The only evidence the Overstreets introduced to show that the township was experiencing growth and development was Mr. Overstreet's testimony that he received 70–100 requests each year for mobilehome sites, and there were no vacancies in any of the mobilehome parks in the area, including his own. The board accepted the contrary testimony of the township engineer, Frederick J. Turner, that there were numerous vacancies in mobilehome parks in the vicinity of the Overstreets' park, although not all of them were located in Schuylkill Township.   Although requests for mobilehomes and the attempts of developers to get permission to build them are factors in determining whether there is unmet demand for mobilehomes,[10] the evidence in the record here, without more, is not enough to satisfy the first requirement of *Surrick*.

---

8.   The board did not make separate conclusions of law on each part of the *Surrick* test, but did conclude that the township provided for its fair share of mobilehome parks, citing *Surrick*.

9.   *E.g., Surrick; Willistown Township v. Chesterdale Farms, Inc.,* 462 Pa. 445, 341 A.2d 466 (1975); *Waynesborough Corp. v. Easttown Township Zoning Hearing Board,* 23 Pa.Commonwealth Ct. 137, 350 A.2d 895 (1976).

10.   *Jackson,* 108 Pa.Commonwealth Ct. at 253, 529 A.2d at 98; *The Villa, Inc. v. Zoning Hearing Board, Old Forge Borough,* 57 Pa.Commonwealth Ct. 221, 226, 426 A.2d 1209, 1212 (1981).

■ As to the second prong of the test, we agree with the trial court that the Overstreets did not meet their burden of showing that the present level of development could accommodate more mobilehome parks within the township. The record lacks evidence about the amount of undeveloped land in the township, and the number of additional mobilehome units that might be accommodated under the existing zoning scheme. Without such information we cannot determine whether the township is already so highly developed that it cannot accommodate more mobilehome parks, if, in fact, more mobilehome parks are needed, or whether the township could accommodate more mobilehome parks, but is unfairly excluding them through its zoning ordinance. *See Surrick,* 476 Pa. at 192, 382 A.2d at 110.

The township's planning expert, Wayne Grafton, testified that 6.2%, or 355 acres, of township land was zoned to permit mobilehome parks. Mr. Grafton also testified that mobilehomes comprised approximately 10% of the current housing stock in the township, including the seventy mobilehome units in dispute, and approximately 7% of the total housing stock when the disputed units were omitted from the count. In his opinion, both the amount of land available for mobilehome parks and the proportion of housing in the township devoted to mobilehomes was a little higher than in surrounding townships. The board accepted those figures and opinions in its findings.

■ The Overstreets argued that the relatively large percentage of land available in the township for mobilehome parks was deceptive, because most of the land zoned for mobilehome parks was not suitable for development, but we agree with the trial court that such factors are not relevant to the fair share analysis. The Overstreets argued that some of the land zoned C/LI is encumbered with streams, railroad tracks, and has already been subdivided into small parcels, making it difficult to develop a mobilehome park. But, as this court stated in *Villa, Inc.,* "suitability of a site is not a relevant consideration when determining the constitutional validity of an ordinance challenged on the grounds of being exclusion-

ary." 57 Pa.Commonwealth Ct. at 227, 426 A.2d at 1212. Likewise, the fact that some of the land in the C District is already developed with commercial properties does not render the land unavailable for purposes of the fair share analysis. "[W]e fail to see the analogy by which we could reason that a legitimately appropriated area for a specific use which has been saturated is in the same posture as a total prohibition of that use within a municipality." *Groff,* 1 Pa.Commonwealth Ct. at 442, 274 A.2d at 575.[11]

We agree with the board and trial court as to the final part of the *Surrick* test, that the Overstreets have not carried their heavy burden of proving that the township has not provided for its fair share of mobilehome parks through its zoning laws. When viewed with the lack of evidence of anticipated population growth in the township, lack of demonstrated need for more mobilehomes, and the amount of land available for mobilehome parks, the Ordinance does not have the effect of excluding mobilehome parks from the township.

Although the Overstreets argue that the high cost of buying land in C/LI Districts works as *de facto* exclusionary zoning, the record does not support that assertion. The Overstreets' real estate expert, Mr. Cafp, stated that commercial land was three times more expensive than residential land, but when asked if it would be economically feasible to build a mobilehome park in C/LI Districts in the township, he responded, "Whether it would be economically feasible, I doubt it, but you cannot state that it is not doable." The board did not include Mr. Cafp's estimate of land values in its findings of fact. The township's real estate appraisal expert, Luther Rife, also testified about the costs of buying commercial, industrial, and residential land in the township, but his testimony was stricken because he lacked sufficient numbers and types of sales from which to form accurate comparisons within the region.

The amount of land within the township set aside for mobilehome park development is not so small as to be a mere token; therefore the Ordinance is not *de facto* exclusionary.

---

11. *See also Kaiserman v. Springfield Township,* 22 Pa.Commonwealth Ct. 287, 292–93, 348 A.2d 467, 470–71 (1975).

The *Surrick* case, which involved an ordinance excluding multi-family dwellings, does not contemplate a magic percentage, but rather states:

> This percentage must be considered in light of current population growth pressure, within the community as well as the region, and in light of the total amount of undeveloped land in the community. Where the amount of land zoned as being available for multi-family dwellings is disproportionately small in relation to these latter factors, the ordinance will be held to be exclusionary.

476 Pa. at 194, 382 A.2d at 111.

The board did not err in concluding that the amount of land allotted to mobilehome parks within the township was not disproportionately small in light of the growth and level of development in the community. This court has held zoning ordinances to be *de facto* exclusionary because they failed to provide their fair share for a particular use when the amount of land in question ranged from .6% to 1.16%. *Villa,* 57 Pa.Commonwealth Ct. at 228, 426 A.2d at 1212–13. This court has also held that a township provided for its fair share of mobilehome parks when just 2.5% of its land was zoned to permit mobilehome parks. *Hodge.*

The Overstreets' argument that the township has allocated so much land for residential uses with large lots, that the amount left for mobilehome parks is disproportionately small is not convincing. The Overstreets rely on *Environmental Communities,* where this court found a zoning ordinance impermissibly exclusionary when 80% of the available land was zoned for residential use with one acre or more minimum lots, leaving only 1.37% of the land for mobilehome parks in the municipality. 49 Pa.Commonwealth Ct. at 169, 412 A.2d at 652. In this case, however, the record shows that the township's three Residential Districts comprise approximately 75% of the total land, but more than one-half of this residential land requires minimum lots of less than one acre.[12] The

12. Schuylkill Township's primary Residential Districts are:

|     |                             |       |
| --- | --------------------------- | ----- |
| FR  | 50,000 sq. ft. minimum lot (1.1 acre) | 32.7% |

evidence in the record does not persuade us to overturn the board's determination that the township provides its fair share of land for mobilehome parks.

## EQUAL PROTECTION ANALYSIS

The Overstreets also argue that the Ordinance violates their constitutional rights to equal protection and substantive due process [13] because it distinguishes mobilehome parks from other residential uses without any rational relationship to a legitimate government interest, thereby limiting the rights of low income persons to acquire and possess property.[14] This argument must fail for the same reasons we articulated earlier, namely, that it is not unreasonable to restrict mobilehome parks to C/LI Districts as opposed to Residential Districts because a mobilehome park is, at least in part, a commercial enterprise which is not incompatible with the uses permitted in the C/LI Districts. *See Hodge.*

Further, although this court has recognized, as did the board and trial court, that mobilehomes provide opportunities for low and moderate income people to own homes,[15] the record here does not support the Overstreets' claim that the Ordinance denies equal protection of law to low income people by excluding mobilehome parks. First, the Overstreets have not proven that the township impermissibly excludes mobilehome parks. Second, the board found credible the testimony of residents of the Overstreet park who stated that their incomes ranged from $25,000 to $40,000, which exceed the

| R-1 | 35,000 sq. ft. minimum lot | 25.3% |
|-----|----------------------------|-------|
|     | (.8 acre)                  |       |
| R-2 | 20,000 sq. ft. minimum lot | 17.1% |
|     | (.46 acre)                 |       |

13.  U.S. Const. amend. XIV, § 1 and Pa. Const. art. I, § 1.

14.  Contrary to the Overstreets' suggestion, because the right to use and acquire property is not a fundamental right in constitutional analysis, *McSwain v. Commonwealth of Pennsylvania,* 103 Pa.Commonwealth Ct. 326, 332, 520 A.2d 527, 530 (1987), nor is poverty a suspect class, strict scrutiny of the Ordinance is not warranted.

15.  *See Environmental Communities,* 49 Pa.Commonwealth Ct. at 170, 412 A.2d at 652.

upper limit for low/moderate income households of $24,999, accepted by the Overstreets. Therefore, the Overstreets did not prove that residents of their mobilehome park were, in fact, low/moderate income people. Third, the record reveals that mobilehomes are not the only type of housing available in the area which is affordable to people of limited resources. Substantial evidence in the record supports the board's finding that individuals and families with low/moderate incomes find housing in rowhouses, townhouses, and apartments.

Although the Overstreets submitted into evidence a 1980 Task Force Report on the "Need for Low Income Housing in Chester County," the board, within its discretion, did not accept the report's conclusions as a finding of fact. Neither the board nor the trial court erred in denying the Overstreets' challenge to the Ordinance on equal protection or substantive due process grounds because the regulation of mobilehome parks bears a rational relationship to the legitimate governmental interest of protecting the health, safety, and welfare of all its residents.

### ANALYSIS OF THE SUBDIVISION ORDINANCE

The board did not err when it concluded that section 603.1 of the Subdivision Ordinance imposes a reasonable requirement that lots within mobilehome parks have a minimum area of 5000 square feet. The board accepted the opinion of the township planning expert, Mr. Grafton, that 5000 square feet was a very reasonable size for mobilehome lots, that it was similar to national norms, and provided enough space for amenities, parking, and open space within the park. The Overstreets' expert, Mr. Cafp, testified that although the majority of mobilehome parks he was familiar with had lots smaller than 5000 square feet, he didn't believe there was anything wrong with that area requirement.

Furthermore, this court has held that mobilehome park minimum lot requirements ranging from 7,000 to 18,700 square feet are valid.[16] The Overstreets did not meet their

---

**16.** *E.g., Pyle v. Harmar Township Zoning Hearing Board,* 20 Pa.Commonwealth Ct. 4, 340 A.2d 613 (1975); *Colonial Park for Mobile Homes,*

heavy burden of invalidating section 603.1 of the Subdivision Ordinance with the evidence in the record before us because they did not prove that the minimum lot requirement was not reasonably related to the health, safety, and welfare of the community.

## ANALYSIS OF THE BOARD'S FINDINGS

Lastly, we agree with the trial court in concluding that the Overstreets' challenge to certain findings of fact made by the board as improper conclusions of law or lacking substantial evidence must be denied. Specifically, the boards findings of fact Nos. 30, 33, 41, and 43 may improperly summarize testimony, but they are not necessary to support the board's conclusions of law. The Overstreets object to findings 44 and 52 because they are based on documents which were improperly admitted or not admitted at all into evidence, but each of them is additionally supported by testimony in the record. Findings 54, 55, and 56 relate to the number of available mobilehome spaces in the Schuylkill Township area, all of which are supported by evidence in the record or are irrelevant to the board's conclusions. We also conclude that findings 84 and 89, relating to the availability of land in the C/LI Districts on which to develop mobilehome parks, are not supported by substantial evidence in the record, but they are not necessary to support the board's conclusions, so the errors are harmless.

## CONCLUSION

We are anxious to provide a resolution of this case, which began in 1969, and we have attempted to address carefully all of the claims raised by the Overstreets. In summary, our decision on the merits of this case is as follows.

1. The board committed no errors of law nor abused its discretion in upholding the validity of the township's zoning ordinance restricting mobilehome parks to C/LI Districts.

*Inc. v. New Britain Township,* 47 Pa.Commonwealth Ct. 459, 408 A.2d 1160 (1979). `

This regulation is not unreasonable, does not have the effect of impermissibly excluding mobilehome parks from the township, and it does not deny the Overstreets equal protection under the law.

2. The minimum lot requirement for mobilehomes in the Subdivision Ordinance is not unreasonable, and the board did not err in upholding it.

3. Any erroneous findings of fact made by the board were not necessary to support its conclusions.

4. Because the question of the permitted expansion of a nonconforming use, which the trial court remanded for further findings about the exact number, was not presented to this court on appeal, we will not consider it.

5. The Overstreets' appeal from the trial court's imposition of a rule absolute holding them in contempt will be addressed in the companion to this opinion, *Overstreet v. Schuylkill Township* (No. 2563 C.D.1991, filed Dec. 3, 1992).

Accordingly, we affirm.

## ORDER

(Nos. 2562 C.D. 1991 and 2564 C.D. 1991)

NOW, December 3, 1992, we affirm the orders of the Court of Common Pleas of Chester County, dated October 31, 1991, as amended by the order dated November 27, 1991, at No. 135 Equity 1980, as it relates to the merits of this case.