IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UMH Properties, Inc.,                :
                Appellant      :
                                :
            v.                :   No.  1200 C.D. 2020
                                :   Argued:  September 20, 2021
Greenwich Township Board of     :
Supervisors               :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: December 16, 2021

UMH Properties, Inc. (Applicant) appeals from an order of the Berks County Court of Common Pleas (Trial Court), dated October 19, 2020, that denied its Land Use Appeal (Appeal), and affirmed the decision of the Greenwich Township (Township) Board of Supervisors (Board).  Applicant contends that the Township Zoning Ordinance of 1973 (Ordinance)[1] imposes a *de facto* exclusion of mobile home communities.  Applicant argues that the Township does not permit its fair share of mobile home communities given the economic growth in the area.  In addition, it asserts the Trial Court and Board conflated mobile homes with mobile home communities, which affected the result.  Upon review, we affirm.

---

[1] The Greenwich Township Zoning Ordinance of 1973, *as amended* November 6, 2000, March 3, 2003, June 1, 2009, May 3, 2010, and October 14, 2014.  Reproduced Record (R.R.) at 22a.

# I. Background

Applicant owns 88.64 acres, which, since the 1970s, it has operated as Highland Estates, a mobile home community in Berks County, Pennsylvania. The existing mobile home community is located within a High Density Residential (HDR) District. Applicant proposed development of a 106-unit expansion (High Pointe) with higher end mobile homes on an adjacent parcel of 69.58 acres located in a Rural Zoning District (Property). The Property is located in a Rural District that is governed by Section 403 of the Ordinance, which limits residences to one single-family dwelling per three acres. Ordinance, §403. Relevant here, mobile home communities like Applicant's are expressly permitted in only the HDR District. *See* Ordinance, §405.1(A)(4).

The Township is located entirely in the Hawk Mountain Region in the northeastern part of Berks County proximate to the Interstate 78 corridor. The Township shares a small border with Lehigh County that is a substantial distance from the suburban areas of the Lehigh Valley Area experiencing the most growth.

Pursuant to Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10916.1,[2] Applicant made a substantive validity challenge to the Ordinance. Specifically, it alleged that the zoning scheme effected a *de facto* exclusion of mobile home communities from the Township other than within the HDR District. It also asserted the regulations over HDR development in the Rural District were arbitrary and unduly restrictive. Paired with its challenge,

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

Applicant filed a Curative Amendment seeking to change the zoning designation in the area of its proposed expansion[3] to allow the mobile home community use.

The Board held a series of hearings, where it heard testimony of expert and fact witnesses. At the conclusion of the last hearing, the Board orally denied the challenge, and issued a written decision on August 12, 2019, which contained 121 findings of fact and 12 conclusions of law. *See* Bd. Op., 8/12/19; Reproduced Record (R.R.) at 555a-93a.

Significantly, the Board found: "Since mobile homes are defined by the Ordinance as single-family dwellings, mobile homes are permitted in the Agricultural Preservation District; the Conservation District; the Rural District; the Low Density Residential District; and the HDR District." *Id.*, Finding of Fact (F.F.) No. 44. As a result, it concluded that the Ordinance did not have the effect of excluding that class of housing. Relevant factors the Board considered in determining the community was not appropriate in the proposed area were the Berks County Comprehensive Plan and the Joint Comprehensive Plan with Lenhartsville Borough (F.F. No. 58), and its proposed location within the Hawk Mountain Region (F.F. No. 78), which is mainly a recreational area. F.F. No. 80. The Board credited the evidence of Township's expert over that of Applicant's expert.

Applicant appealed the Board's decision to the Trial Court. Without taking additional evidence, the Trial Court affirmed the Board.

Applicant timely appealed the Trial Court's order to this Court. The Trial Court directed the filing of a Pa. R.A.P. 1925(b) Statement. Applicant

---

[3] As the Township notes, Applicant did not specifically designate the area for the zoning change. However, the parties and decision-makers deemed the area coterminous with the Property.

3

assigned numerous errors in the Board's findings as to the Township's growth, and asserted the Board disregarded its expert's unrefuted testimony. Subsequently, in its Rule 1925(a) opinion of January 22, 2021, the Trial Court emphasized that Applicant was aware of the restriction in the Rural District when it acquired the Property and should not have expected to change the zone through its Curative Amendment.

After briefing and argument, the matter is ready for disposition.

## II. Issue

Applicant presents a substantive validity challenge to the Ordinance, alleging *de facto* exclusion based on the limitation of mobile home parks to only the HDR District. It submitted a Curative Amendment to expand the HDR District to include the Property for which it proposed an upgraded mobile home community.

## III. Discussion

On appeal,[4] Applicant argues that the Ordinance's restriction of mobile home communities in only the HDR District constitutes a *de facto* exclusion meriting a decision in its favor. It asserts the Board ignored the difference between a non-transient mobile home park and a transient mobile home when it determined that the Township met the fair share test under *Surrick v. Zoning Hearing Board of Upper Providence Township*, 382 A.2d 105 (Pa. 1977), for that class of housing. Applicant also assigns error to the Board in that it did not make a

---

[4] In a land use appeal where the trial court takes no additional evidence, our "review is limited to determining whether the municipal body abused its discretion or committed an error of law." *Ethan-Michael, Inc. v. Bd. of Supervisors of Union Twp.*, 918 A.2d 203, 208 n.4 (Pa. Cmwlth. 2007). Further, "[w]e are bound by the facts as found by the [factfinder] that are supported by substantial evidence, which [is] defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 898-99 (Pa. 2019).

4

finding that less than 10% of land in the Township is available for development, which it asserts is crucial to assessing the validity challenge.

The Township counters that the Ordinance passes constitutional muster because it permits mobile home communities in the HDR District and mobile homes are permitted in multiple districts, including up to four on an acre in the Village District. It maintains that the Township is not within the path of growth or development, and that the Board's findings and credibility determinations in that regard are entitled to deference.

Zoning is inherently local, involving a multiplicity of factors affecting the permissible uses of property. *See Rice Fam. Tr. v. City of St. Marys*, 51 A.3d 913 (Pa. Cmwlth. 2012) (noting stated purpose of a particular zoning district is a significant factor in analyzing use under ordinance). In reviewing the permissibility of uses, we consider the purpose of particular districts and local concerns:

> Zoning accounts for the "natural, scenic, historic and esthetic values of the environment" . . . by placing compatible uses in the same zoning district; by establishing minimum lot sizes and dimensional requirements; providing parking and signage controls; and requiring landscape and screening controls. This list goes on. It is axiomatic that a zoning ordinance must balance the public interests of the community with the due process rights of private property owners.

*Frederick v. Allegheny Twp. Zoning Hearing Bd.*, 196 A.3d 677, 695 (Pa. Cmwlth. 2018) (*en banc*) (citation omitted).

Traditional principles for construing a zoning ordinance apply. An ordinance is construed pursuant to the principles in the Statutory Construction Act of 1972, 1 Pa. C.S. §§1501-1991. "[I]n accordance with the dictates of statutory construction, we are required to interpret an ordinance, if possible, in a manner which will not violate the federal or state constitutions." *Hatboro Borough v.*

5

*Buckingham Retail Props., LLC*, 245 A.3d 728, 737-38 (Pa. Cmwlth. 2020) (citations omitted). If a term is undefined, we construe terms in accordance with their plain meaning, 1 Pa. C.S. §1903(a), and "may consult definitions in statutes, regulations[,] or dictionaries for" guidance. *Id.* A municipality's interpretation of its ordinance is entitled to substantial deference. *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 288 (Pa. Cmwlth. 2000). "Where an ordinance is reasonably susceptible of two conflicting constructions, a court should adopt that interpretation which would uphold the validity of the ordinance." *Hatboro Borough*, 245 A.3d at 738 (citations omitted).

Generally, an ordinance is entitled to a presumption that it is constitutionally valid. *Interstate Outdoor Advert., L.P. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 (Pa. Cmwlth. 2012). To overcome this presumption, the party challenging the ordinance bears a heavy burden to show the ordinance completely or effectively excludes an otherwise legitimate use. *Id.*

### A. Substantive Validity Challenge: *De Facto* Exclusion

This Court consistently holds:

> There are two ways a challenger can [overcome the presumption of constitutionality]: (1) by showing the ordinance is *de jure* exclusionary; or (2) by showing the ordinance is *de facto* exclusionary. A *de jure* exclusion exists if the ordinance, on its face, totally excludes a use. In contrast, a *de facto* exclusion exists if, when applied, the ordinance effectively acts to prohibit a use that is otherwise permitted.

*Hatboro Borough*, 245 A.3d at 737 (Pa. Cmwlth. 2020) (citations omitted).

Here, Applicant argues the Ordinance *de facto* excludes mobile home communities. In support of its position, Applicant cites Section 301 of the Ordinance, which differentiates between mobile home parks and individual

6

transient mobile homes.  Specifically, Section 301 (definitions) of the Ordinance defines a Manufactured (Mobile) Home as:

> A transportable single[-]family dwelling intended for permanent occupancy contained in one unit, or in two units designed to be joined into one integral unit capable of again being separated for repeated towing. . . .

R.R. at 36a.  By contrast, a Manufactured (Mobile) Home Park is defined as:

> a parcel of land under single ownership which has been planned and improved for the placement of mobile homes for non-transient use, consisting of two (2) or more mobile home lots.

*Id.*  Thus, one is a dwelling, and the other is a planned, *non-transient* community.

> Section 403.1 of the Ordinance, relating to Rural Districts, provides:

> The intent of this section is to regulate development in sensitive natural areas, such as those that contain or consist of steep slopes, wetlands or floodplains. By regulating development in these environmentally sensitive areas, the Township can protect water quality, reduce soil erosion and sedimentation, preserve habitat for animals, and prevent loss of life and property due to flooding. <u>The maximum density of new residential development in this district will be limited to permitting single family detached dwellings at an average of not more than one (1) home per three (3) acres</u>.  The Township encourages creative planning and design toward compact development of smaller lots to help preserve the natural areas.

R.R. at 61a (emphasis added).

Thus, Applicant "alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished." *Bloomsburg Indus. Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969, 978 (Pa. Cmwlth. 2020) (quoting *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hr'g Bd.*, 102 A.3d 549, 572 (Pa. Cmwlth. 2014)).  Because the Ordinance defines a mobile home as a single-family dwelling, it is subject to the three-acre

7

requirement in the Rural District, which, Applicant argues, effectively prohibits mobile home communities in the Rural District.[5]

Whether an ordinance is exclusionary is a question of law, reviewable by the Court. *Id.* Courts examine whether an ordinance is exclusionary using a two-step analysis. "[F]irst[, we] consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes [the proposed use] as a use." *Hatboro Borough*, 245 A.3d at 738 (citing *Twp. of Exeter v. Zoning Hr'g Bd. of Exeter Twp.*, 962 A.2d 653, 661 (Pa. 2009)). Then, only if a challenger rebuts the presumption that the ordinance is valid does the burden shift to the municipality to demonstrate that the regulation bears a substantial relationship to the public health, safety, and welfare. *Id.*

Here, the Board found that the Ordinance struck the proper balance between natural preservation and property rights. The development of these communities may be fairly confined to a single type of district.

The Ordinance is being applied consistent with the purpose of the varied districts. There is a legitimate purpose this Court recognizes in preserving rural areas and maintaining/conserving recreational areas. Those are the stated purposes of the Rural District. *See* Bd. Op. at 32 (quoting Ordinance, §403.1); R.R. at 587a. In addition, based on the exhibits submitted, including the subsequently-approved County Conservation Plan, the Property is located in a conservation area. The conservation interests are legitimate, and the provision at issue in the Ordinance is reasonably related to that interest. *See Crystal Forest Assocs., LP v. Buckingham Twp. Supervisors*, 872 A.2d 206, 216 (Pa. Cmwlth.

---

[5] However, as to residential uses, the Ordinance permits subdivision of parcels for a maximum number of residences according to the formula N (# dwellings) = A (Area)/3. Ordinance, §403.2.

2005) (allowing restrictions of mobile homes in agricultural district, noting "zoning for density, [such as] minimum lot sizes, is a legitimate exercise of the police power"). As such, the minimum lot size in the Rural District, of one single-family dwelling per three acres, is not unconstitutional *per se*. *Id.*

The Board made numerous findings regarding the rural and agricultural nature of the Township as a whole, and the natural features of the Property in particular. There is a relationship between the purpose of the Rural District and the zoning restrictions over the Property to preclude use as a mobile home park. As the HDR District is comprised of 105 acres, there remains 16 to 17 acres where mobile home parks are permitted. F.F. No. 52. Therefore, we discern no merit in Applicant's challenge to the Ordinance as inconsistent with its plain language or arbitrary given the purpose of the Rural District.[6]

### B. *Surrick* Test & Fair Share Analysis

Next, we consider Applicant's contention that the Township does not accommodate its fair share of mobile home communities in light of the path of growth in the area. Specifically, it contends that the Board erred in applying the *Surrick* test and abused its discretion in disregarding evidence regarding the path of growth and development in the area. We disagree.

The *Surrick* test consists of three parts. The first part is whether the Township is in the path of growth, the second is the level of development in the area, and the third is whether the municipality provided for its fair share of land for the class of housing under review. However, if it is determined that a municipality

---

[6] We are unpersuaded by Applicant's assertion (Applicant's Br. at 21-23) that the phrase "compact development" in Section 403.1 means high density of population. In context, the Board properly construed the phrase to mean low-level of development with maximum open space.

9

is *not* in the path of growth, as the Board found here, the factfinder need not reach the second or third prongs of the test.

In determining whether an area is located within the path of growth the following factors are considered: projected population growth; anticipated economic development; access by major roads/transportation; growth/development in neighboring municipalities; proximity to large metropolitan areas; and residential developer demand/permits issued. *See Surrick*; *K.S. Dev., Co. v. Lower Nazareth Twp.*, 149 A.3d 105 (Pa. Cmwlth. 2016).

Applicant's validity challenge and curative amendment is premised on its assumption that rural northeastern Berks County is growing at the same rate as other areas in the Lehigh Valley. However, the Township's expert testified to the contrary and supported the growth rates with county-wide studies. The Board credited the evidence the Township submitted in this regard over that of Applicant's evidence, which it may do as the factfinder.[7]

The Board found that, despite its proximity to the warehouse industry, which is burgeoning in the region, and its location along the Interstate 78 corridor, the Township is not itself in the path of growth. Rather, the path of growth exists

---

[7] The Board explained its credibility determination as follows:

> Based on the reliance on inconsistent or incorrect information, including but not limited to: (i) the statement that growth in Montgomery County affected the Township, even though the most growth in Montgomery County was focused near the Bucks and Chester County borders; (ii) the statement that the Township had not met its fair share of housing despite Applicant's own Exhibit 23, which listed that the Township had the highest percentage of mobile homes out of any neighboring municipality; and, most alarmingly, (iii) the reliance on an incorrect statement of law in regard to the case *Concord Township Appeal*, 268 A.2d 765 (Pa. 1970) (*see* Applicant Exhibit 38 at 4-5; N.T. 3/26/19 at 181), the Township does not find the expert testimony of Applicant's expert to be credible.

F.F. No. 121. We discern no abuse of discretion in the Board's review of the expert evidence.

10

in other neighboring counties with greater proximity to metropolitan areas like Allentown, Bethlehem, and Easton, and in Montgomery County along the Bucks County and Chester County borders. Applicant's expert acknowledged that the areas experiencing growth are not within the Township.

The Township also posits that there was a lack of developer demand in the area, such that there is little indication of growth and anticipated need for housing to meet community needs.

Ultimately, the Board credited the testimony of the Township's expert over that of Applicant's expert. Relevant here, the Township's expert testified that the Township was not in the path of growth and development, was not experiencing population growth, and, given its topography and natural features, was not a logical area for growth and development.

As to projected population growth in the area, the expert testimony was consistent that Berks County is more rural than bordering counties and is relatively steady at about 10.9% over a projected 30-year period, with an average 3.5% growth rate over a 10-year period. The evidence showed that the growth from 2010 to 2040 would be approximately 408 people. F.F. No. 95. The percentage of growth projected over 10-year periods was as follows: "2010-2020 at 3.44%, for 2020-2030 at 3.56%, and for 2030-2040 at 3.58%." F.F. No. 96 (citing Applicant Ex. 6; Township Ex. 11). The 10-year growth rate for the Township is thus closer to 3.5 percent. None of the neighboring municipalities in Berks County have a growth rate over 11% during similar periods of time.

As to the not highly developed prong of *Surrick*, this Court is not aware of any applicable authority supporting Applicant's assertion that when the evidence shows more than 10% of the land in a municipality is undeveloped, *see*

11

Applicant's Br. at 30, the second prong of the *Surrick* test is met. *See* Applicant's Br. at 31 (citing *In re Appeal of Miller*, 444 A.2d 786 (Pa. Cmwlth. 1982)). Indeed, this Court did not recognize a 10% threshold in *Miller*. Rather, we upheld the ordinance and noted the record contained insufficient evidence regarding the percentage of undeveloped land in the municipality. *Id.* at 788.

Additionally, the Board found that the Township provided its fair share of mobile homes as compared with neighboring municipalities in that mobile homes comprised approximately 24% of its housing. F.F. No. 106. However, the standardized percentage of mobile home composition of housing is 10-15%. F.F. No. 103. Thus, 24% is well above average and is greater than that in other Berks County municipalities.[8]

Presuming for the sake of argument that the first prong of the *Surrick* test was met, the Board would consider the level of development given the percentage of available land for varied uses. If the area is *not* highly developed, then it may be considered as an area ripe for development.

In assessing the level of development for an area, the following factors are considered: a municipality's population density; the percentage of undeveloped land; and the percentage of land available for the class of housing that is allegedly being unconstitutionally restrained. *K.S. Dev.* For purposes of this assessment, land used for agrarian purposes is deemed developed land.

In the case of the Township, the findings reflect there is 105.1 acres of land zoned for HDR use. Within the HDR District, there are 16-17 acres not being used for mobile home communities, F.F. No. 52, despite availability.

---

[8] In 2017, the Township represented 0.96% of Berks County's total population (1,605 to 166,350) but had 7.71% of the County's total mobile homes (387 to 5,019). F.F. No. 117.

12

Regardless, the Board found the Township provided its fair share of mobile home communities in allowing such communities in the HDR District.

Applicant also criticized the Board's Finding No. 26 that mobile homes are single-family dwellings, and on that basis, are permitted in a number of zoning districts in addition to the HDR District. It claims that individual mobile homes are distinguished and materially different than mobile home communities comprised of such homes.

In determining fair share of housing, the Township posits that the class of housing is mobile homes—under its classification, the mobile homes and mobile home communities are considered the same class of housing such that individual mobile homes count toward the fair share of this class.

Essentially, the Township maintains that the Ordinance is proper and there is no *de facto* exclusion of mobile home communities because individual mobile homes are permitted in "multiple zoning districts." Appellee's Br. at 33. The Township asserts that mobile home communities may be maintained in Village Districts as well as the HDR District that permits the use expressly.[9]

---

[9] The Village District allows higher density residential development than a Rural District, allowing four residences on an acre. F.F. No. 53. Section 406.1 of the Ordinance provides:

> The intent of this section is to provide a mixture of 'village commercial' uses with ease of development of such uses with minimum regulation. This District shall provide for small neighborhood-oriented retail, service and office uses in combination with single family homes, twins and townhouses, encouraging traditional development styles and patterns. The maximum density in this district will be limited to four (4) dwelling units or uses per acre with central water and sewer, and to one (1) dwelling unit or use per acre with on-lot sewer and water.

Ordinance, §406.1.

Both parties cite this Court's decision in *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 618 A.2d 1108 (Pa. Cmwlth. 1992), in support of their respective positions. With regard to the mobile home/mobile home *park* distinction, *Overstreet* is instructive.

In *Overstreet*, involving a mobile home park owner's challenge to a trial court decision upholding zoning restrictions, this Court upheld the restriction limiting development of such parks to non-residential districts as permissible. Applicant relies on the following statement: "[B]oth as a legal and a practical matter, individual mobile[]homes and mobile[ ]home parks are two different types of legitimate housing uses." *Id.* at 1113. For that reason, this Court noted that "permitting mobile homes on individual lots will not substitute" for allowing mobile home parks. *Id.*

That stated, this Court reasoned that there were legitimate reasons for restricting mobile home parks (which are more commercial enterprises) to other than residential districts. Importantly, we upheld the restriction of mobile home parks to the commercial district as reasonable. Thus, based on the record, it bears emphasis that limiting mobile home parks to a single zoning district passes constitutional muster and may satisfy the *Surrick* test.

Moreover, the exclusion of mobile home parks from residential districts was also challenged because the commercial districts were reportedly unsuitable given the odors and noises. There is no such claim here that there is no appropriate district, or that there is no space left in the existing district.

In assessing the alleged exclusion under *Surrick* in *Overstreet*, this Court noted that the factual record did not demonstrate a prohibition of mobile home parks or that the amount of land set aside for/permitting mobile home parks is

14

so insignificant as to be illusory. Similarly, here, the land set aside for mobile home parks "is not so small as to be a mere token." *Id.* at 1116. Rather, Applicant owns and operates an almost 90-acre mobile home community comprised of 334 units.[10]

Further, this Court noted that the findings were supported by the record and the factfinder had the prerogative to exclude or give little weight to a landowner's evidence regarding the alleged need for low-income housing or additional housing options.

Indeed, in the instant matter, Applicant already owns and operates Highland Estates mobile home park community on over 80 acres and has an additional 16-17 acres to develop in the same HDR District. Also, it bears noting that, in its brief, the Township draws this Court's attention to the availability of land in the Village District for more dense housing. *See* Appellee's Br. at 42, 44. That the Property that Applicant owns and proposed to develop as an expansion of its adjacent mobile home park is not usable for the purpose for which it would prefer to use the Property does not render the Ordinance exclusionary.

Regardless of whether the class of residence is comprised of individual mobile homes or a mobile home park, we discern no *de facto* exclusion under the Ordinance. With respect to a mobile home community, the Ordinance permits such communities in the HDR District. That Applicant already owns and operates such a community in the existing 80-plus acre parcel shows the Township allows that use consistent with the Ordinance and has not excluded that use.

In sum, we conclude Applicant did not meet its heavy burden of invalidating the Ordinance based on the credited evidence of record because it did

---

[10] The Township received permit applications for four other mobile home parks comprised of smaller numbers of units in 2019. *See* F.F. No. 57.

15

not establish that the limitations applicable to residences in the Rural District and the zoning scheme overall is not reasonably related to the health, safety, and welfare of the community.

## IV. Conclusion

For the foregoing reasons, we affirm the Trial Court's order affirming the Board's decision.

_____
J. ANDREW CROMPTON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UMH Properties, Inc.,            :
                  Appellant     :
                               :
         v.                  :    No. 1200 C.D. 2020
                               :
Greenwich Township Board of   :
Supervisors                   :

## **O R D E R**

       **AND NOW**, this 16th day of December 2021, the order of the Berks County Court of Common Pleas is AFFIRMED.

 

                            _____
                            J. ANDREW CROMPTON, Judge