**CRYSTAL FOREST ASSOCIATES, LP**

v.

**BUCKINGHAM TOWNSHIP SUPERVISORS.**

**Appeal of: Buckingham Township.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.
Decided March 16, 2005.
Reargument Denied May 12, 2005.

---

Craig A. Smith, Newtown, for appellant.

Marc B. Kaplin, Blue Bell, for appellees, Crystal Forest Associates, L.P. and Frank McKee, Jr., Trustee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Buckingham Township (Township) appeals from an order of the Court of Common Pleas of Bucks County (trial court) which: (1) reversed a decision of the Buckingham Township Board of Supervisors (Board) denying the challenge of Crystal Forest Associates, L.P. and Frank McKee, Jr. (collectively McKee) to the validity of the Buckingham Township Zoning Ordinance (Ordinance); (2) directed that McKee's petition in the form of a curative amendment be granted; and (3) directed that a permit be granted to McKee to develop a mobile home park as proposed subject only to the dimensional requirements that are set forth in Article 17 of the Ordinance as applied to mobile home parks.[1] We reverse.

McKee is the owner and operator of Buckingham Springs, a 645–unit mobile home park located in the Township's only Mobile Home Park Residential District (MHP District).[2] Buckingham Springs is the only property located in the MHP District and the only mobile home park in the Township. Nearly 100% of the residents are age 55 or older. R.R. at 14f. There is an average of 4.1 units per acre

---

1. This case was assigned to the author on February 1, 2005.

2. See Sections 1700–1703 of the Ordinance, Reproduced Record (R.R.) at 20a–20b.

and the park has been completely built out since 1996. R.R. at 14c, 14f. McKee also owns two parcels of land comprised of 55.7 acres and 24.9 acres (Property) that are contiguous to Buckingham Springs.[3] The Property is located in an Agricultural–1 (AG–1) District.[4] In 1995, McKee began an effort to have the Property rezoned so that he could extend Buckingham Springs in order to meet the increasing demand for lots and homes in the park. Notwithstanding a determination by the Township's Planning Commission that McKee's proposed development would benefit the community,[5] the Township denied his request.

McKee initiated his first action in 1996 in the form of a substantive challenge to the Ordinance with a proposed curative amendment. McKee alleged that the Ordinance was unconstitutionally *de facto* exclusionary with respect to mobile home parks and that the Township did not provide for its "fair share" of land on which mobile home parks could be developed.[6] McKee was unsuccessful at the Board level, at the trial court level and before this Court. *Crystal Forest Associates, L.P. v. Buckingham Township Board of Supervisors* (Pa.Cmwlth., No. 61 C.D.1998, filed November 2, 1998).[7] McKee's petition for allowance of appeal to the Pennsylvania

---

**3.** McKee is the trustee of his father's estate, which is the record owner of the larger parcel. The smaller parcel is owned by Crystal Forest Associates, L.P. McKee's company, McKee Properties, Inc., is the general partner of Crystal Forest. R.R. at 14e. In the interest of clarity, we shall refer to McKee as the owner of the Property that is comprised of the two parcels.

**4.** *See* Ordinance §§ 500–503, R.R. at 19, 22–23b.

**5.** The Planning Commission concluded that a new mobile home community "would accommodate the elderly population, would make sense in light of the adjacent MHP zoning of Buckingham Springs and would enhance the community." Trial Court Opinion at 7, Finding of Fact (F.F.) No. 8.

**6.** The so-called "fair share" test for deciding *de facto* exclusionary zoning challenges was established by our Supreme Court in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977). In that case, the township, which was located twelve miles from Philadelphia at the nexus of two major traffic arteries, allotted only 1.14% of its land for multi-family dwellings. In considering whether the township's zoning ordinance unconstitutionally excluded that use, the Court reaffirmed its conviction that "communities must deal with the problems of population growth. They may not refuse to confront the future by adopting zoning regulations that effectively restrict

population to near present levels." *Id.* at 189, 382 A.2d at 108 (quoting *Township of Willistown v. Chesterdale Farms, Inc.*, 462 Pa. 445, 449, 341 A.2d 466, 468)). The Court identified three pertinent factors for review of a zoning ordinance alleged to be exclusionary. This Court has aptly summarized the *Surrick* "fair share" test as follows:

First, the inquiry must focus on whether the community in question is a logical area for population growth and development. Next, if the community is in the path of growth, the present level of development must be examined. Lastly, if the community which is located in the path of growth is not already highly developed, then the reviewing body must determine if the zoning ordinance has the practical effect of unlawfully excluding the legitimate use in question. *Exclusionary impact can invalidate an ordinance; exclusionary intent is not necessary.*
*Overstreet v. Zoning Hearing Board of Schuylkill Township*, 152 Pa.Cmwlth. 90, 618 A.2d 1108, 1113 (1992) (emphasis added).

**7.** In our memorandum opinion, we concurred with the trial court that McKee failed to present sufficient evidence that there was a market or need for mobile homes in mobile parks in the future; evidence of present use was not enough. Notably, the trial court in the 1996 challenge did not hold that the Township provided its fair share of mobile home housing, only that the fair share had been saturated by other uses and that McKee had chosen to

Supreme Court was also denied. *In re Crystal Forest Associates, L.P.*, 559 Pa. 707, 740 A.2d 235 (1999).

In 1998, McKee filed a second substantive challenge to the Ordinance with a proposed curative amendment, again alleging that the Ordinance was unconstitutionally *de facto* exclusionary with respect to mobile home parks. This second challenge was based on the allegation that no land in the Township was available for development of mobile home parks. This Court ultimately affirmed the trial court's dismissal of McKee's action pursuant to the doctrine of *res judicata. Crystal Forest Associates, L.P.; Frank McKee and Helen McKee v. Zoning Hearing Board of Buckingham Township* (Pa.Cmwlth., No. 1758 C.D.1999, filed April 3, 2000).

In 1996, while McKee's first fair share action was pending, the Township amended the Ordinance to allow the development of mobile home parks as a conditional use in an AG–1 District. Thus, as the Ordinance now stands, there are two zoning districts in which use B4, Mobile Home Park, is expressly permitted: in an AG–1 District as a permitted conditional use and in the MHP District as a use permitted by right. Ordinance §§ 501.B, 1701. As a result of the 1996 amendment, the Ordinance also provides, in pertinent part, as follows:

> Use B4 when used in the AG–1 district shall not be subject to the requirements of Section 405.B4, Mobile Home Parks,

but shall be subject instead to all of the following requirements:

\* \* \*

> b. Mobile home parks are permitted in accordance with the requirements for Use B2 Cluster with Transferable Development Rights,[8] as set forth in Section 502.A.4, with the exception that the requirements for minimum average lot area per site, minimum lot area, and minimum lot width at building setback line shall not be applicable to Mobile Home Parks in the AG–1 district.

Ordinance § 502.A.6, *added by* Ordinance 96–01 (May 8, 1996). The 1996 amendment resulted in greater restrictions on mobile home parks in an AG–1 District than in an MHP District with respect to maximum density of units per acre, minimum open space, maximum impervious surface, and other dimensional requirements. Additionally, a landowner must purchase transferable development rights in order to develop a mobile home park in an AG–1 District, while no such requirement is imposed in the MHP District.

In December 2000, McKee initiated the present action challenging the Ordinance requirements as unduly restrictive because they make development of a mobile home park in an AG–1 District economically unfeasible. In conjunction with his substantive challenge, McKee proposed a curative amendment to the Ordinance pursuant to Section 609.1 of the Municipalities Planning Code (MPC).[9] McKee's curative

---

limit the number of mobile homes on his property. The trial court also recognized that with an increase in population and demand such a challenge could be successful in the future.

8. In transferable development rights (TDR) programs, landowners are compensated for loss of development opportunities by being given development rights that can be used elsewhere to exceed applicable restrictions in

the "receiving area." In effect, TDRs involve shifting potential development from one area to another, with the result that sensitive land is preserved. Mark W. Cordes, *Property Rights And Land Use Controls: Balancing Private And Public Interest*, 19 N. Ill. U.L.Rev. 629, 651 n. 93 (1999).

9. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. Section 609.1 was *added by* the Act of June 1, 1972, P.L. 333, *as*

amendment sought to make mobile home parks in an AG–1 District subject to the same density and dimensional restrictions applicable to mobile home parks in the MHP District.[10] The Board conducted nineteen public hearings from February 2001 through October 2002. Following the hearings, the Board issued a decision on February 26, 2003, denying McKee's challenge and upholding the validity of the challenged restrictions.

McKee appealed the Board's decision to the trial court. McKee also petitioned to supplement the record, arguing that the Board and the Township's solicitor displayed bias against him throughout the hearings by, *inter alia*, excluding relevant testimony and stifling cross-examination of the Township's witnesses. The trial court granted McKee's motion and began conducting *de novo* hearings on November 19, 2003. Following these hearings, the trial court issued an opinion and order setting forth its own independent findings of fact and conclusions of law. The trial court reversed the Board's decision and granted McKee's curative amendment application. The trial court further directed the Board to grant McKee a permit to develop the proposed mobile home park on the Property subject to the dimensional requirements set forth in the Ordinance pertaining to MHP Districts. The trial court retained jurisdiction for the purpose of implementing its order. This timely appeal by the Township followed.

■ On appeal,[11] the Township raises three issues which we have reordered for purposes of our discussion: (1) Whether the trial court erred in granting McKee's motion to supplement the record; (2)

---

*amended,* 53 P.S. § 10609.1. Section 609.1 reads in pertinent part:

> (a) A landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in section 916.1.
>
> (b) The hearing shall be conducted in accordance with section 908 and all references therein to the zoning hearing board shall, for purposes of this section be references to the governing body: provided, however, That the provisions of section 908(1.2) and (9) shall not apply and the provisions of section 916.1 shall control. If a municipality does not accept a landowner's curative amendment brought in accordance with this subsection and a court subsequently rules that the challenge has merit, the court's decision shall not result in a declaration of invalidity for the entire zoning ordinance and map, but only for those provisions which specifically relate to the landowner's curative amendment and challenge.

53 P.S. § 10609.1. Such a challenge requires the governing body to act, in effect, as a quasi-judicial body and consider the legal merit of the challenge to the validity of an ordinance. *Baker v. Chartiers Township,* 163 Pa.Cmwlth. 574, 641 A.2d 688, 690 (1994) (distinguishing a curative amendment application from a request for rezoning).

10. The proposed amendment set forth the following curative provision:

> **SECTION 1.** Section 502.A.6 of the Buckingham Township Zoning Ordinance is amended and superceded by the following language:
> Use B4 Mobile Home Park—Requirements for Mobile Home Parks in the AG–1 District. Mobile home parks in the AG–1 District shall be subject to the requirements of Section 405.B4, Mobile Home Parks.
> R.R. at 2j–2k.

11. Where the trial court in a zoning case receives additional evidence it must decide the case *de novo,* and this Court's scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *DeCray v. Zoning Hearing Board of Upper Saucon Township,* 143 Pa.Cmwlth. 469, 599 A.2d 286, 287–288 (1991).

Whether the trial court erred or abused its discretion in making certain procedural and evidentiary rulings during the *de novo* hearing; and (3) Whether the trial court erred in finding that the Ordinance was unduly restrictive and in granting McKee's curative amendment application on that basis.

■ The Township first argues that the trial court erred in reopening the record, on McKee's motion, and holding hearings *de novo*. Section 1005–A of the MPC provides, in relevant part, as follows:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court *may hold a hearing to receive additional evidence,* may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence.

53 P.S. § 11005–A (emphasis added). Whether the presentation of additional evidence is to be permitted under this provision is a matter within the discretion of the trial court. *Eastern Consolidation and Distribution Services, Inc. v. Board of Commissioners of Hampden Township,* 701 A.2d 621, 624 (1997). In making that determination,

> [a] court of common pleas faces compulsion to hear additional evidence in a zoning case *only* where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded.

*Id.* (quoting *Appeal of Little Britain Township From Decision of Zoning Hearing Board of Little Britain Township, Lancaster County, Pa.,* 651 A.2d 606, 613 (Pa.Cmwlth.1994)) (emphasis in original).

■ In this case, the trial court reviewed the transcripts of the nineteen public hearings conducted by the Board. The trial court found that counsel for the Township, by interposing constant objections, effectively prevented McKee and his planning expert from offering complete testimony. By contrast, the trial court found that the Township's expert witnesses were allowed to testify at length on a number of topics that were only tangentially related to the issues at hand. In the trial court's opinion, the record reflected "a constant adversarial and biased spirit toward McKee's witnesses and disregard for the objections of McKee's counsel." Trial Court Opinion at 10. Indeed, the trial court found that the Township's counsel, and there were several, used the Board hearing to "filibuster," by making an objection to each question asked of McKee's witnesses that they followed with speeches on the merits of the objections. Trial Court Opinion at 4–5. Given the seriousness of the trial court's concerns, which are supported by the record, we find that the trial court did not abuse its discretion by reopening the record and holding hearings *de novo* to ensure that McKee had an opportunity to be heard fully.

■ The Township's next issue on appeal concerns certain procedural and evidentiary rulings of the trial court. First, the Township argues that the trial court interfered with its right to counsel by insisting that Albert J. Cepparulo withdraw as co-counsel for the Township. Mr. Cepparulo was a judge-elect of the Court of Common Pleas of Bucks County when the parties proceeded to the *de novo* hearing on November 19, 2003, but he was not to be sworn in until January 2004. Judges-elect, the Township notes, are not prohibited from practicing law under the Pennsylvania Constitution or the Code of Judicial Conduct.

■ The record reveals that the trial court expressed concern about Mr. Cepparulo serving as counsel and advised him to "consider withdrawing from this case." R.R. at 14a. Mr. Cepparulo agreed and offered to let co-counsel "handle the rest of the hearing." *Id.* The Township simply mischaracterizes the record by suggesting that the trial court removed its counsel; Mr. Cepparulo voluntarily withdrew from the case. The trial court issued its final order in this matter on May 3, 2004, four months after Mr. Cepparulo was sworn in as a judge of the same court. This timing had potential to raise questions in the public view about whether the trial court's decision was free of Mr. Cepparulo's input as a judge, as opposed to his work as an advocate. Such questions among laypersons may or may not be reasonable. In any case, co-counsel was ready and able to proceed with the hearing. The trial court did not commit reversible error by suggesting that Mr. Cepparulo withdraw, and he did so freely.[12]

■ The Township's next evidentiary challenge is that the trial court prejudiced the Township's case by impeding its cross-examination of McKee's witnesses and overruling virtually all of the Township's objections. Conduct of a trial is within the discretion of the trial judge and the court's exercise of its discretion will not be reversed in the absence of abuse. *Fraternal Order of Police, Lodge 5 v. City of Philadelphia,* 160 Pa.Cmwlth. 409, 635 A.2d 222, 227 (1993). Likewise, the scope and limits of cross-examination are within the trial court's discretion and will be upheld absent a clear showing of abuse. *Id.* An abuse of discretion is not merely an error of judgment, but, if in reaching a conclusion, the law is overridden or misapplied, or judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by evidence of record, discretion is abused. *Id.*

We have reviewed the transcript from the *de novo* hearing and find no merit to the Township's contentions. The trial court did overrule most of the Township's objections, which, incidentally, were lodged after nearly every question posed by McKee's counsel on direct examination. As the trial court aptly noted, the proceeding below was not a jury trial; the court preferred to hear all the evidence and decide after the fact what was relevant and what was not. R.R. at 4h. We cannot fault the trial court for conducting the hearing with an eye toward eliciting relevant evidence. The trial court enjoyed broad discretion in such matters and did not abuse that discretion in this instance.

■ Finally, the Township contends that the trial court improperly excluded the testimony of its expert witness, Robert H. Edelstein, Ph.D., and committed further error by refusing to hear an offer of proof regarding the substance of Dr. Edelstein's proffered testimony. Dr. Edelstein was offered as an expert in real estate development and finance. According to the Township, his testimony was necessary to rebut McKee's direct testimony that it is economically unfeasible to develop a mobile home park in an AG–1 District under the current Ordinance.

---

12. We note that the Township did not raise a timely objection to this alleged removal of counsel. Thus, as McKee points out, the issue has not been preserved for our review and is now waived. *See National Union Fire Insurance Co. of Pittsburgh v. Gateway Motels, Inc.,* 551 Pa. 407, 409, 710 A.2d 1127, 1128 (1998) ("It is axiomatic that in order to preserve a trial objection for review, trial counsel is required to make a timely, specific objection during trial.").

In Pennsylvania, the test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480–481, 664 A.2d 525, 528 (1995). Qualification of an expert witness rests within the sound discretion of the trial judge, and absent an abuse of that discretion, the decision of the trial judge should be upheld. *Id.* at 481, 664 A.2d at 528.

Here, McKee rested his case on the first day of the *de novo* hearing, November 19, 2003. The following day, after rejecting a request for a thirty day continuance, the trial court granted a ten day continuance, extending over the Thanksgiving holiday, so that the Township could secure its expert on land and real estate development. At the continued hearing on December 5, 2003, the Township presented Dr. Edelstein. The trial court asked for an offer of proof, at which point counsel for the Township summarized Dr. Edelstein's qualifications and indicated that he would testify regarding the methodology of assessing profitability and economic infeasibility in real estate development matters and then apply that methodology to McKee's project. R.R. at 17d–17e.

During *voir dire*, Dr. Edelstein testified that he had been retained by the Township just two to three days prior to his appearance in court. R.R. at 17bb–17cc. In preparation, he reviewed two transcripts from the hearings before the Board, McKee's exhibits, the Board's findings of fact and final decision and this Court's opinion in *Stahl v. Upper Southampton Township Zoning Hearing Board*, 146 Pa. Cmwlth. 659, 606 A.2d 960 (1992). R.R. at 17pp–17ss. Dr. Edelstein was unaware that the Township had conducted nineteen public hearings on McKee's proposed curative amendment. R.R. at 17qq. He did not review the Ordinance, nor did he conduct an independent analysis of the economic feasibility of McKee's development plan, opting instead to evaluate the prior testimony on that subject. R.R. at 17gg.

The trial court concluded that this hastily arranged witness, with his limited knowledge of the facts and issues, would not aid in the decision-making process. Based upon the record before us, we find that the trial court abused its discretion by excluding Dr. Edelstein's testimony. It is clear from Dr. Edelstein's testimony before the trial court and his 21 page curriculum vitae referencing his numerous honors, teaching experience, professional activities, consulting experience, speeches/presentations, publications, and journal articles,[13] that he is an expert in the area of real estate development and real estate financing. The documentation that Dr. Edelstein reviewed in preparing for his testimony before the trial court went to the credibility and the weight of his testimony, not his qualifications as an expert in the aforementioned fields of expertise. Accordingly, we hold that the trial court improperly excluded Dr. Edelstein's testimony.

The Township's third and final issue on appeal is whether the trial court erred in finding that the Ordinance was unduly restrictive and in granting McKee's curative amendment application on that basis. As stated by this Court:

It is well established that a zoning ordinance is presumed to be valid, and that therefore, one who challenges the validity of the zoning ordinance has a heavy burden of establishing its invalidity. *Schubach v. Silver, 461 Pa. 366, 336 A.2d 328 (1975).* Further, where the

13. *See* R.R. at 47a–47v.

validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control. *Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, 141 A.2d 851 (1958).*

In Pennsylvania, the constitutionality of a zoning ordinance is reviewed under a substantive due process analysis. *Boundary Drive Assoc. v. Shrewsbury Township Board of Supervisors, 507 Pa. 481, 491 A.2d 86 (1985); Shohola Falls Trails End Property Owners Ass'n v. Zoning Hearing Board of Shohola Township, 679 A.2d 1335 (Pa.Cmwlth. 1996), appeal denied, 548 Pa. 651, 695 A.2d 788 (1997).* Under such an analysis, the zoning ordinance is considered constitutional as a valid exercise of police power, when it promotes public health, safety and welfare and is substantially related to the purpose it purports to serve. *Boundary Drive.*

A significant factor in determining the reasonableness of a land use restriction is whether the restriction is consistent with the stated purpose of the particular zoning district. *Hock v. Board of Supervisors of Mount Pleasant Township, 154 Pa.Cmwlth. 101, 622 A.2d 431 (1993).* Preservation of agricultural land is recognized as a legitimate governmental goal, which can be implemented by zoning regulation. *Hopewell Township Board of Supervisors v. Golla, 499 Pa. 246, 452 A.2d 1337 (1982).* The MPC thus authorizes the municipalities to enact zoning ordinances regulating "protection and preservation of . . . agricultural land and activities." *Section 603(b)(5) of the MPC, 53 P.S. § 10603(b)(5).* The MPC further provides that the zoning ordinances "shall be designed . . . to preserve prime agriculture and farmland considering topography, soil type and classification, and present use." *Section 604(3) of the*

*MPC, 53 P.S. § 10604(3) (emphasis added).*

*Kirk v. Zoning Hearing Board of Honey Brook Township, 713 A.2d 1226, 1229 (Pa. Cmwlth.1998).*

Accordingly, the question is whether, in this case, the reasonableness of the restrictions placed on mobile home parks in the AG-1 District is consistent with the stated purpose of that district. Herein, the stated purpose of the AG-1 District is "to promote the preservation of agriculture as the primary use of undeveloped land." R.R. at 19a. Limited residential uses are permitted as well as agricultural uses with a mobile home park being permitted by conditional use. *Id.* The stated purpose of the AG-1 District also provides that "[t]he standards and densities are intended to provide a positive incentive for the preservation of large amounts of open space through the use of transfer of development rights which may be sold from parcels in [the AG-1 District] and transferred to other parcels in the Township." *Id.*

■ As stated previously herein, it is well settled that preservation of agricultural land is recognized as a legitimate governmental goal, which can be implemented by zoning regulation. *Kirk,* 713 A.2d at 1229. In addition, "zoning for density, such as a zoning provision regulating minimum lot sizes, is a legitimate exercise of the police power." *Id.* at 1230. "Any minimum acreage requirement is not unconstitutional per se, and its constitutionality must be determined on a case-by-case basis because every case involves a different set of facts and circumstances." *Id.*

In determining whether the restrictions on mobile home parks in the AG-1 District were reasonable in this case, the trial court compared the agricultural/open space requirements for other uses within

the AG–1 District and concluded that the AG–1 District regulations as a whole were not reasonably related to the preservation of agriculture. The trial court based this conclusion on its determination that land within the AG–1 District could be developed for other uses without providing for open space or agricultural use. For example, the trial court concluded that land within the AG–1 District could be subdivided into 1.8 acre residential lots without providing any open space or agricultural use and that land could be developed as a Use B5–Flexible Subdivision with lots of 25,000 square feet without providing for open space or agricultural use. The trial court found that it is only when mobile homes are proposed that open space and agricultural use apply. The trial court also compared the dimensional requirements as they apply to mobile home parks in the MHP District and the AG–1 District.

The assignment of different dimensional criteria and bulk criteria to the same use in different districts is a generally accepted and typical planning tool consistent with the MPC. *See* Section 605 of the MPC, 53 P.S. § 10605 (As among several classes of zoning districts, the provisions for permitted uses may be mutually exclusive in whole or in part.). Therefore, the trial court erred by comparing the differences between the dimensional requirements for mobile home parks in the MHP District and the AG–1 District when determining the reasonableness of the restrictions placed on the development of mobile home parks in the AG–1 District.

■ Moreover, the trial court's comparison between the open space and agricultural use requirements for each separate use permitted in the AG–1 District to determine the reasonableness of the restrictions placed on mobile home development was also misplaced. Each use within

the AG–1 District calls for different dimensional requirements in order to further the purpose of that zoning district. Comparing only the open space or agricultural use provisions of each use to determine if the entire regulation of the use within that district is reasonable is error. The restrictions of a use or the regulation of a use must be reviewed as a whole. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 820 A.2d 143 (2002).

A review of all the dimensional requirements for the uses permitted in the AG–1 District reveals that the restrictions placed on each use are reasonable. For example, while the Use B5—Flexible Lot Size Subdivision—requires 0 percent minimum open space, the minimum site area is 25 acres and the minimum lot area is 25,000 square feet. R.R. at 23a. Another example is the Use B1—Single Family Detached Dwelling—which requires a minimum lot area of 1.8 acres and maximum impervious surface per lot of 15 percent. Therefore, the dimensional requirements of these uses do further the purpose of the AG–1 District as these requirements restrict the amount of land than can be developed for each use.

Moreover, the dimensional requirements for a mobile home park also further the purpose of the AG–1 District to preserve agriculture as the primary use of undeveloped land and, therefore, are not unreasonable. The Ordinance provides that the minimum open space shall be 50 percent, the minimum site area shall be 25 acres and the maximum density of .47–.94 units per net acre.

■ The Ordinance in this case is a classic example of the governing body of the Township choosing through its legislative judgment to impose certain standards and densities to encourage the preservation of large amounts of open space and to

discourage development in the AG–1 District which belies that district's purpose. We also point out that an ordinance is not to be declared invalid merely because it may deprive the owner of the most lucrative and profitable uses. *Kirk.*

Accordingly, we hold that the trial court erred in finding that the dimensional requirements imposed on land used in the AG–1 District for mobile home parks are unduly restrictive and unreasonable.[14] Thus, the trial court's order is reversed.

### ORDER

AND NOW, this 16th day of March, 2005, the order of the Court of Common Pleas of Bucks County in the above captioned matter is reversed.

### DISSENTING OPINION BY Judge LEAVITT.

With all due respect, I dissent. I believe that the trial court properly excluded the testimony of the Township's proffered expert witness, Robert H. Edelstein, Ph. D., who was hastily prepared and not familiar with key aspects of this case. As such, Dr. Edelstein was incompetent to offer expert testimony. I also disagree with my colleagues' conclusion that the challenged provisions of the Ordinance are not unduly restrictive. Today the majority has endorsed illusory zoning as a means of

**14.** We note that the Township's Ordinance does not totally exclude mobile home parks. To the contrary, mobile home parks are a permitted use by right in the MHP and, as stated previously herein, McKee is the owner and operator of that 645 unit mobile home park. Therefore, any reliance on *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960 (1992), in this matter is misplaced. While this Court held in *Stahl* that the dimensional and density requirements of the township's mobile home park ordinance made the ordinance unduly restrictive, *Stahl* dealt with the situation where mobile home parks were only permitted in one zoning district—the R–4 (Residential) District. That is clearly not the situation here.

We recognize that McKee did prevail below on the theory that the restrictions placed on the development of a mobile home park as a conditional use in the AG–1 District resulted in the development of a mobile home park being economically unfeasible. However, the fact cannot be ignored that the Township's Ordinance provides for mobile home parks as a permitted use by right in the MHP District and that proper development pursuant to the Ordinance has resulted in the space for that use being totally exhausted by McKee's voluntary reduction of the number of mobile homes which could be placed in that park by one half.

As stated by this Court in *Appeal of Groff,* 1 Pa.Cmwlth. 439, 274 A.2d 574, 575 (1971):

It is an altogether different situation where the township has provided space for development of a use and that space is exhausted by proper development. While it may be inherently discriminatory for a township to totally exclude a use from its borders, we fail to see the analogy by which we could reason that a legitimately appropriate area for a specific use which has been saturated is in the same posture as a total prohibition of that use within a municipality.

In *Montgomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285, 289 (Pa.Cmwlth.2000), this Court pointed out that "while a township must in its zoning scheme provide for all reasonable uses, it is not required to zone for every business model." In other words, if a township provides for a use in one zoning district, a township need not zone specifically to allow the same use with the same restrictions in every zoning district in order to avoid the conclusion that the ordinance is exclusionary. In addition, " '[t]o allow open ground in a township to be used for any purpose whatever solely because little or no undeveloped land remains in areas properly zoned for that purpose would be the antithesis of that sound planning which is the rationale for all zoning.' " *Montgomery Crossing Associates,* 758 A.2d at 291 (quoting *Kaiserman v. Springfield Township,* 22 Pa.Cmwlth. 287, 348 A.2d 467, 471 (1975)).

regulating land use and development. I am deeply troubled by that result.

With respect to the issue of Dr. Edelstein's competency, it is "well established that the admission of expert-opinion evidence is a matter for the direction of the trial [c]ourt and will not be reversed, overruled or disturbed unless there was a clear abuse of discretion." *Laubach v. Haigh*, 433 Pa. 487, 491, 252 A.2d 682, 683 (1969). This Court and the Pennsylvania Supreme Court have repeatedly upheld trial court decisions excluding expert testimony where the expert had inadequate knowledge of the specific facts of the case. For example, in *Laubach*, an action arising from an automobile accident, plaintiff challenged the trial court's refusal to admit into evidence the expert opinion of a traffic engineer regarding the angle of impact and point of collision. The Supreme Court agreed with the trial court that "[t]here was no evidence that this witness was familiar with the scene of the accident or had examined the vehicles involved at any time before or after the accident." *Id.* at 490, 252 A.2d at 683. *See also Laukemann v. Pennsylvania Liquor Control Board*, 82 Pa.Cmwlth. 502, 475 A.2d 955 (1984) (rejecting physician's proffered testimony in liquor license suspension case where witness did not personally examine or have firsthand knowledge of individuals alleged to have been visibly intoxicated); *Nixon Hotel, Inc. v. Redevelopment Authority of City of Butler*, 11 Pa.Cmwlth. 519, 315 A.2d 366 (1974) (disallowing testimony of three proffered experts in condemnation case where none of the witnesses had made a current evaluation of the area for the purpose of determining blight).

In the present case, the Township was aware that the *de novo* hearing would pro-

ceed on a day-to-day basis until complete,[1] but the Township was not ready to present its rebuttal case after McKee rested. Nevertheless, the trial court granted a ten-day continuance to the Township for the very purpose of securing an expert. Notwithstanding this accommodation, the Township did not retain Dr. Edelstein until two to three days before the continued hearing. Any harm to the Township's case caused by the exclusion of Dr. Edelstein's testimony was a harm of the Township's own making.

On this point, the majority acknowledges several deficiencies in Dr. Edelstein's preparation that I find troublesome. Most telling is that Dr. Edelstein never reviewed the Ordinance at issue. He also did not conduct an independent analysis of the economic feasibility of McKee's development plan, which is the very heart of this case. Dr. Edelstein further admitted that he had reviewed only two transcripts from the public hearings before the Board and was unaware that nineteen hearings had been conducted by the Board over a two-year period.

The majority discounts these shortcomings in light of the experience and accomplishments described in Dr. Edelstein's *curriculum vitae*. However, impressive credentials, standing alone, do not an expert make. The proffered experts in *Laubach, Laukemann* and *Nixon Hotel* all had similar achievements but, like Dr. Edelstein, very limited knowledge of the specific facts and issues in those cases. This is not, as the majority suggests, merely an issue of "the credibility and the weight" to be accorded Dr. Edelstein's testimony. Majority Opinion at 12. The extent to which Dr. Edelstein had studied the Ordinance and the economic feasibility of

---

1. After two years and nineteen separate hearings before the Board, the Township could

not claim surprise with respect to McKee's case.

McKee's development plan unquestionably went to his competency as an expert witness. The trial judge, sitting as fact-finder, concluded that Dr. Edelstein's testimony would not have facilitated his decision-making process. The judge was in the best position to make such an assessment, and I would defer to his ruling.

Even more troubling is my colleagues' resolution of the main issue in this case: whether the challenged provisions of the Ordinance were unduly restrictive and therefore unconstitutional. It is beyond peradventure that property owners have a constitutionally protected right to enjoy their property. U.S. Const. amends. V, XIV; Pa. Const. art. 1, § 1. That right, however, may be reasonably limited by zoning ordinances that are enacted by municipalities pursuant to their police power, *i.e.,* governmental action taken to protect or preserve the public health, safety, morality and welfare. *Cleaver v. Board of Adjustment of Tredyffrin Township,* 414 Pa. 367, 372, 200 A.2d 408, 412 (1964). Accordingly, as the majority points out, in Pennsylvania the constitutionality of a zoning scheme is reviewed under a substantive due process analysis. Majority Opinion at 13 (quoting *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226, 1229 (Pa.Cmwlth.1998)). Furthermore, "[a] zoning ordinance may be unconstitutional if it is exclusionary *or* unduly restrictive." *Christ United Methodist Church v. Municipality of Bethel Park,* 58 Pa.Cmwlth. 610, 428 A.2d 745, 748 (1981) (emphasis added). *See also Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 476 Pa. 182, 188, 382 A.2d 105, 108 (1977) (acknowledging that "exclusionary *or* unduly restrictive zoning techniques do not have the requisite substantial relationship to the public welfare.") (emphasis added).

"[I]n order to establish that a zoning ordinance is unconstitutional on economic terms, the challenger must establish that the use in question is economically unfeasible." *Heritage Building Group, Inc. v. Plumstead Township Board of Supervisors,* 833 A.2d 1205, 1211 (Pa.Cmwlth. 2003). The phrase "economically unfeasible" relates to the effect an ordinance has on any developer who, because of an ordinance's restrictions, is barred from development because of economic infeasibility. *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960, 967 (1992). An ordinance may not be declared invalid because it deprives the landowner of his most lucrative and profitable uses; so long as the property in question may be *reasonably used for the purposes permitted under the ordinance,* the owner may not legally complain. *Kirk,* 713 A.2d at 1231 (emphasis added).

As the above authority makes clear, an ordinance will be found unconstitutional if it is exclusionary or if it renders a permitted use economically unfeasible by imposing unduly restrictive requirements on that permitted use. These alternative theories were both at issue in *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960 (1992). *Stahl* is particularly instructive here and worthy of further discussion.

In *Stahl,* the township's zoning ordinance permitted mobile home parks only in R–4 (Residential) Districts and required that each lot in a mobile home park have a minimum size of 9,000 square feet, a minimum width of 75 feet, a minimum front yard of 30 feet and a minimum rear yard of 35 feet. The ordinance further imposed the maximum density requirement applicable to single-family detached dwellings, which was three units per acre. Landowners sought to develop a mobile home park

on a tract of land they owned in an R–2 District.[2] They challenged the substantive validity of the ordinance, asserting that it effected a *de facto* exclusion of mobile home parks, and proposed a curative amendment. Landowners were unsuccessful before the zoning hearing board and the trial court.

On appeal to this Court, landowners raised two issues that are pertinent to our inquiry today: (1) whether the township's ordinance effected a *de facto* and unconstitutional exclusion of mobile home parks and (2) whether the zoning hearing board erred in concluding that the dimensional aspects of the mobile home park ordinance made the development of mobile home parks infeasible and therefore rendered the ordinance *de facto* exclusionary. *Stahl,* 606 A.2d at 962.[3] This Court, following the *Surrick* test for determining whether zoning is exclusionary, rejected landowners' first issue. We held that landowners failed to meet their burden with regard to their challenge that the township failed to provide its "fair share" of land for mobile home parks.

With respect to landowners' claim of economic infeasibility, we began by recognizing that an ordinance is unduly restrictive if "the severity of its restrictive impact on the owner of the regulated property is unjustified for police power purposes." *Stahl,* 606 A.2d at 964 (quoting *Martin v. Township of Millcreek,* 50 Pa.Cmwlth. 249, 413 A.2d 764, 765 (1980)). We continued

our analysis with language that may be viewed as prophetic to the present case:

> [S]atisfaction of the Supreme Court's fair share requirement outlined in *Surrick* would be meaningless without reasonable zoning provisions that allow development of a particular use such as mobilehome parks. *Theoretically, a municipality could comply with its fair share responsibility and nevertheless indirectly preclude development of a type of housing by adopting restrictive dimensional requirements.*

*Stahl,* 606 A.2d at 965 (emphasis added). Relating these principles to the ordinance before it, the *Stahl* court compared the area and density requirements for mobile home parks versus other uses in the R–4 District and concluded that

> in this municipality, there is no provision for the low-cost housing alternative of a true mobilehome park because the three-units-per-acre 'mobilehome park' is illusory.

> The evidence here does support the [landowners'] argument that development of a mobilehome park in accordance with these ordinance requirements is economically infeasible.

*Id.* at 966.[4] We granted landowners' requested relief and concluded our opinion with language that I find dispositive here:

> [A]lthough economic concerns, i.e., the degree of profit from a use, are not governing with regard to constitutional

---

2. In the R–2 District the township permitted certain agricultural uses along with single-family detached dwelling units, conversion of existing detached dwelling units into apartments as a conditional use, and cluster development of detached single-family homes as a conditional use.

3. Landowners raised a third issue: whether the ordinance was *de facto* exclusionary because it did not permit lots in mobile home parks to be sold in fee simple or under a

condominium regime. We rejected this argument because the MPC's definition of "mobile home park" at the time the township adopted its ordinance included a reference to single ownership.

4. The Court relied in large part on the testimony of landowners' expert, who opined that development of the property in strict conformance with the ordinance would cost between $25,000 and $30,000 per lot.

challenges, *if an ordinance, through its particular requirements, makes the development of a use permitted by the ordinance economically impossible, the ordinance is unconstitutional, because the municipality has essentially precluded a legitimate use by an indirect means.*

*Id.* at 967 (emphasis added). *See also Montgomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285, 290 (Pa.Cmwlth.2000) ("The critical question is not whether one use is more profitable, but rather whether the excluded use is so unprofitable in its permitted zone as to be effectively excluded.").

The majority dismisses the *Stahl* analysis by asserting that *Stahl* is inapposite. I disagree. While it may be factually distinguishable from the present case, *Stahl* nevertheless reinforces the notion that "exclusionary" and "unduly restrictive" are two distinct grounds for assailing the constitutionality of an ordinance. That the *Stahl* court found the challenged ordinance was not exclusionary has no bearing on its ultimate conclusion that the ordinance's dimensional and density requirements made it economically unfeasible to develop a mobile home park. This fact, standing alone, rendered the ordinance unconstitutional. The theory on which the Stahls, or McKee, or any landowner proceeds is really irrelevant; the clear import of the *Stahl* analysis is that illusory zoning is an unconstitutional exercise of a municipality's police power. Unduly restrictive zoning techniques simply do not have the requisite substantial relationship to the public welfare. *Surrick,* 476 Pa. at 188, 382 A.2d at 108. Moreover, I can think of no clearer abrogation of substantive due process than a governing body granting a property right, *e.g.,* permitting mobile home park development in a given zoning district, and then foreclosing that right through unduly restrictive density and setback requirements.[5]

Returning to the case at bar, McKee and professional land planner R. Douglas Stewart were both accepted as experts by the trial court. Together they offered a complete economic analysis of developing and operating a mobile home park on the Property with 37, 58 and 74 units, both with and without amenities.[6] Reproduced Record at 46 (R.R. ——). All of these scenarios resulted in a net operating loss ranging from $15,450 to $99,780. *Id.*[7]

5. Of course the Township did not have to allow mobile home parks as a conditional use in the AG–1 District. It chose to do so, however, presumably with the belief that the accompanying density and dimensional requirements would pass constitutional muster. This Court should also not ignore the timing of the Township's actions. The challenged zoning provisions were added by amendment in 1996, while McKee's first fair share action was pending. In my view this was more than coincidental and only highlights the illusory nature of the conditional use.

6. The parties disagreed as to how many mobile home units could be developed on the Property under the current zoning restrictions. The discrepancies pertain to whether transferable development rights are required under the Ordinance (and available), and whether certain environmentally sensitive areas have to be netted out of the gross acreage. These mathematical differences are irrelevant since McKee proved that under any scenario he would be operating the park at a loss.

7. At the Board hearings, McKee presented evidence that development and operation of a 58–unit mobile home park on the Property under the above restrictions would yield a rate of return between 1.125% and 1.58% depending upon whether amenities such as a clubhouse, swimming pool, walking trails and tennis courts were included. R.R. 28–29. Significantly, those figures did not account for the financing costs associated with the purchase of the ground and transferable development rights, or the cost of site improvements.

McKee testified that the losses would be greater in the early years of development before the park is fully occupied. The trial court credited this uncontroverted testimony and supporting evidence, and this Court is bound by this fact finding. Based upon the record evidence, the trial court properly concluded, as a matter of law, that "[t]he dimensional requirements are unduly restrictive and do not allow for the economically feasible development of a mobile home park." Trial Court Opinion at 21. Because the type of mobile home park permitted in the AG–1 District is illusory, the decisional law of this Commonwealth, particularly *Stahl*, requires that such a zoning provision must fail.

The Township's restrictions on mobile home parks in the AG–1 District deviate widely from the dimensional requirements for mobile home parks in the MHP District. This stark contrast is illustrated by the chart below, which was prepared by the trial court:

| REQUIREMENT | MHP DISTRICT | AG–1 DISTRICT (McKee Property) |
| --- | --- | --- |
| Min. lot area | 5320 square feet | _____ |
| Min. open space | 25% | 50% (80% of which must be in one farmable parcel) |
| Max. impervious | 50% | 25% |
| Min. site area | 50 acres | 25 acres |
| Max. Density | 5 units per gross acre | .47–.94 units per net acre |
| Min. front yard | 20 feet | 25 feet |
| Min. side yard | 5 feet | 10 feet |
| Min. rear yard | 10 feet | 40 feet |
| Min. perimeter setback | 50 feet | 100 feet |

Trial Court Opinion at 9. The Township defends these differences as necessary to preserve open space in the AG–1 District. This defense does not withstand close scrutiny.

Preserving open space is an unassailable objective. Indeed, the MPC authorizes municipalities to enact zoning ordinances regulating "[p]rotection and preservation of ... agricultural land and activities." Section 603(b)(5) of the MPC, 53 P.S. § 10603(b)(5). The MPC further provides that zoning ordinances "shall be designed ... [t]o preserve prime agriculture and farmland considering topography, soil type and classification, and present use." Section 604(3) of the MPC, 53 P.S. § 10604(3).[8] However the fact remains that, as a matter of law, the Township may not impose zoning restrictions that render a permitted use economically unfeasible. There is simply no lawful justification for illusory zoning.

The Township's defense is also impossible to reconcile with the fact that the Ordinance permits various other uses in

---

**8.** I hasten to add that the same section of the MPC requires that zoning ordinances be designed "[t]o provide for the use of land within the municipality for residential housing of various dwelling types encompassing all basic forms of housing, including single-family and two-family dwellings, and a reasonable range of multifamily dwellings in various arrangements, *mobile homes and mobile home parks*, provided, however, that no zoning ordinance shall be deemed invalid for the failure to provide for any other specific dwelling type." Section 604(4) of the MPC, 53 P.S. § 10604(4) (emphasis added).

the AG–1 District that do not further the preservation of agriculture or open space. For instance, the entire AG–1 District could be subdivided into 1.8 acre residential lots, with no minimum requirements for agricultural use or open space, in accordance with use B1 (Single Family Detached Dwelling), which is a use permitted by right. Ordinance § 502.A.1. The same is true of use B5 (Flexible Lot Size Subdivision), which allows for a minimum lot area of only 25,000 square feet, or just over one-half acre. Ordinance § 502.A.3. The Ordinance also permits houses of worship, schools, golf courses, day care centers, bed and breakfasts and emergency facilities to be located in the AG–1 District without agricultural or open space provisions. Ordinance §§ 501.B, 502.A.8. As the trial court aptly noted, it is only when mobile homes are involved that the more burdensome use and dimensional regulations apply.

For the foregoing reasons, I would affirm the order of the trial court.